**Mary Hirshberg, Appellee, v. Walter J. Cummings et al., Trading as Chicago Surface Lines, Appellants.**

### Gen. No. 43,050.

Opinion filed October 23, 1944. Released for publication November 6, 1944.

FRANK L. KRIETE, WARNER H. ROBINSON and ARTHUR J. DONOVAN, all of Chicago, for appellants; WILLIAM J. FLAHERTY, of Chicago, of counsel.

SHER & KARLIN, of Chicago, for appellee; LEO S. KARLIN, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendants to recover damages for personal injuries sustained by her

as a result of the claimed negligence of defendants' motorman in the operation of a street car in which plaintiff was a passenger. There was a jury trial, a verdict and judgment of $5,000 and defendants appeal.

The record discloses that about 10 minutes to 9 on the morning of December 2, 1940, plaintiff, a woman about 55 years of age, boarded one of defendants' street cars which was being operated in a southwesterly direction on 5th avenue, Chicago. She entered at the front of the car, walked back to the middle where she paid the conductor her fare and before she had time to be seated, the car suddenly stopped, causing her to be thrown to the floor and severely injured. The motorman and the conductor helped her up, the conductor procured a taxicab nearby and went with her to her home.

Defendants contend that the court should have directed a verdict in their favor at the close of all the evidence and that after the verdict their motion for a judgment notwithstanding the verdict should have been sustained for the reason that defendants were not liable as a matter of law and that the judgment should be reversed without remandment. Their further position is that if the court does not agree with them then the judgment should be reversed and the cause remanded for the reason that the verdict is contrary to the manifest weight of the evidence.

The evidence is uncontradicted. Defendants operate a double line of street cars on 5th avenue which runs northeast and southwest. On the morning in question plaintiff boarded one of defendants' southwestbound street cars at St. Louis avenue entering the car at the front. As she was paying her fare to the conductor, who was standing at his proper place in about the middle of the car, and after the car had proceeded less than a block, an automobile truck backed out of a north and south alley from the northerly side of 5th avenue in front of the street car which caused the motorman

to suddenly stop the car to prevent a collision between the two vehicles, as a result of which plaintiff was thrown to the floor of the car and severely injured.

The motorman testified that he had been employed as a motorman for 26 years; that at the time in question he was operating one of the new type streamliner cars southwesterly on 5th avenue; that as he approached St. Louis avenue, a north and south street, he stopped the car and plaintiff entered at the proper place, the front door; that he then started the car in the ordinary way and got up a speed of about 25 miles an hour; that "A truck backed out of the alley on the north side of the street;" that on the east side of the alley there was a large apartment building four stories high which extended to the sidewalk line; that he saw the truck when he was about 45 to 50 feet east of the alley; that he sounded his gong and threw on the brakes; that the truck was backing out at about 8 miles an hour; that he stopped the street car as quickly as possible; that "When my car came to a standstill, the truck was on the west track with the tail end of it on the east track. I brought my car to a standstill about four or five feet from the truck. . . . The truck backed diagonally out onto the east bound track. He was turning to go west." That the lady fell as he stopped the street car; that the truck drove away and the car proceeded about 4 blocks when plaintiff was assisted from the street car into a taxicab. On cross-examination he testified that from his position in the street car he had a clear view in front of the car; that the truck "was a dark green truck, about a three ton truck, a panel closed truck." That he did not see any writing or signs on the truck. "I took the name and address of the driver and the license as he pulled away. I don't remember that I turned it in." That after he stopped the street car the truck turned and went west. "I took the license number of the truck as it turned. I copied that license number but I don't remember if I

got it right, it was dirty. I don't remember if I turned it in." That he had been operating street cars on 5th avenue for about 4 years; that he saw the tail end of the truck backing out of the alley when he was from 45 to 50 feet away; that the street car traveled about 4 blocks before plaintiff was assisted from it, at which time the conductor went around the corner and got a yellow taxicab; that he thought the sidewalk on the north side of 5th avenue at the alley was about 12 feet wide and from the curbstone to the first rail of the street car track was about 12 feet.

David L. Dobbs, called by defendants, who was the only other passenger on the street car, testified that plaintiff boarded the street car at St. Louis avenue; that at the time he was reading his paper, heard the clanging of the bell, glanced up and saw the truck; the car stopped and plaintiff was thrown forward toward the front of the car; that the truck was practically on the track when he first saw it and was on the track when the street car stopped; that he gave his name to the street car conductor. On cross-examination he testified that: "It was a dark truck. It was quite a large truck. It was an open truck." That a tarpaulin was on it.

The street car conductor, called by defendants, testified that he had been employed by the street car company for 29 years; that after plaintiff boarded the car he heard the sound of the gong and the motorman applying the brakes; that he saw a dark truck backing out of the alley which was the reason for the street car stopping; that after plaintiff fell, the car proceeded about 4 blocks; that he and the motorman assisted plaintiff from the car and the witness hailed a taxicab and went to plaintiff's home in the cab with her. She lived at a hotel; that he did not get a good look at the truck but it was a dark colored truck and that after the accident the truck drove away. This is substantially all the evidence as to how the accident occurred.

Upon a careful consideration of all the evidence we are of opinion that all reasonable minds would not reach the conclusion that there was no negligence on the part of the motorman and in such a situation the question of negligence is one of fact for the jury. *Louthan v. Chicago City Ry. Co.,* 198 Ill. App. 329; *Bale v. Chicago Junction Ry. Co.,* 259 Ill. 476; *Kelly v. Chicago City Ry. Co.,* 283 Ill. 640. The jury had a right to weigh the testimony of the motorman and of the other witnesses. According to the evidence the distance from the building on the northerly side of the street east of the alley to the first rail of the southwesterly street car track was about 24 feet. And while the truck was backing this distance it was seen by the motorman. Furthermore, the evidence is to the effect that plaintiff was apparently severely injured. She had to be taken from the street car in a taxicab to her home and yet the motorman testified that he did not think he made a report of the accident to his employer. The jury found in favor of plaintiff and their finding was approved by the trial judge, and in these circumstances, upon a consideration of all the evidence, we are unable to say that the verdict of the jury, approved as it was by the court, is so manifestly against the weight of the evidence as to warrant interference on our part.

Defendants further contend that the court erred in giving plaintiff's instructions 1 and 8. Instruction 1 defined the duty of the defendant street car company as a common carrier and told the jury that while the carrier was not an insurer of the absolute safety of the passengers, "it does, however, in legal contemplation, undertake to exercise the highest degree of care, as herein defined, to secure the safety of the passenger and is responsible for the slightest neglect resulting in injury to the passenger" etc. This instruction has been criticized in many cases for telling the jury that the defendant was responsible for the

"slightest negligence." In *Elmore v. Cummings,* 321 Ill. App. 234, we reviewed the authorities on this question and said that the words "slightest negligence" ought not to be given in any case. But the judgment in that case was not reversed solely for the giving of that instruction. We adhere to what we there said. In that case the testimony of the witnesses as to how the accident occurred was in sharp conflict while in the instant case there is no conflict in the evidence as to how plaintiff was thrown and injured. In view of all the evidence we think the instruction ought not to have been given but that it is not reversibly erroneous.

By Instruction 8 the jury were told that "in passing upon the testimony of all the witnesses who have testified in this case, you have the right to take into consideration any interest which said witnesses may feel growing out of their relation to either of the parties to this suit, as employes or otherwise, if any such is shown, and give to the testimony such weight only as you think it entitled to under the evidence in this case." We think this instruction was not improper. The jury had a right to consider, in weighing the testimony of the motorman, that if there was a verdict in plaintiff's favor, the motorman would be to blame. Obviously we do not imply that he was not telling the absolute truth but this was a question for the jury.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

NIEMEYER, P. J., and MATCHETT, J., concur.