**Gordon Ankney, Appellant v. John T. Myroth, Jr., Appellee.**

Gen. No. 11,503.

Second District, Second Division.

September 19, 1961.

 █ 

Dixon & Gunner, of Dixon, for appellant.

Fearer & Nye, of Oregon, for appellee.

SPIVEY, P. J.

This appeal is from an order of the Circuit Court of Ogle County denying plaintiff's post trial motion after a verdict by a jury in favor of the defendant. Plaintiff's action was for personal injuries sustained in an automobile collision on April 26, 1957.

The collision occurred at the intersection of two gravel roads. Plaintiff was travelling in a southerly direction, and defendant was travelling in an easterly direction. Photographs show that the defendant's auto struck the plaintiff's auto on the right side near the

center of the car. In the collision, the plaintiff sustained serious personal injury. At the intersection, the uncontradicted evidence shows that visibility of each of the drivers was obstructed as they approached the intersection.

Plaintiff contends that the verdict of the jury is against the manifest weight of the evidence and that the Court erred in giving two instructions for the defendant. For these reasons, he requests a new trial.

■ Plaintiff's burden, in this case, was to show by the greater weight of the evidence that he was exercising ordinary care for his own safety, that the defendant was negligent, and that the negligence of the defendant proximately caused injuries to the plaintiff. The evidence conclusively shows that plaintiff was injured. Thus, if we are to grant plaintiff a new trial, on the theory that the verdict is against the manifest weight of the evidence, we must find that the jury's determination that the plaintiff failed to prove he exercised ordinary care, that the defendant was negligent or that plaintiff's injuries were proximately caused by defendant's negligence, or any one of these elements is wrong according to the evidence offered in the cause.

To sustain his burden on the issue of the plaintiff's exercise of ordinary care, plaintiff called the defendant as an adverse witness. He also called deputy sheriff Ronald Zimmerman and Boyd Galen Ankney, post occurrence witnesses, Ronald Ankney, the son of the plaintiff, who was riding with plaintiff, Donald E. Gillis and Blair Thuestad, post occurrence witnesses, and the plaintiff testified in his own behalf.

As opposed to this, defendant called Charles S. Knox, a surveyor, George Dunham, a state police officer and post occurrence witness, and the defendant testified in his own behalf.

175

Plaintiff testified that he approached this intersection from the north and that his view to his right was obscured by buildings, bushes and trees. When he was 300 feet north of the intersection his vision was obstructed and he was traveling 35 to 40 miles per hour. Then he started to reduce his speed by taking his foot from the accelerator. When he was 30 feet north of the intersection, he had his first unobstructed view for 800 feet west. Then he saw the defendant 200 feet west at an undetermined speed. When his car was at the intersection, he looked right again and the defendant was 75–80 feet away, and plaintiff could not then estimate defendant's speed. Plaintiff continued through the intersection and was struck when his vehicle was in the southwest corner of the intersection. At the time of the accident, plaintiff was traveling 20 miles per hour.

Defendant testified that he approached the intersection at a speed of 30 to 35 miles per hour. He did not recall looking right or left within the last 300 to 400 feet before the intersection but did apply his brakes when 50 to 75 feet from the intersection. He could only vaguely remember seeing plaintiff's car before the collision and stated that he had no vision to the north, right up to the intersection.

The other witnesses testified that there were skid marks for 50 to 75 feet west of the intersection which extended into the intersection for about two feet. The cars came to rest in the southeast corner of the intersection with plaintiff's car in the ditch in that corner. Visibility was stated to be almost zero until a driver was in the intersection, and the impact was said by one witness to be in the southeast quarter of the intersection.

We do not know on what basis plaintiff's claim was refused by the jury. However, it may well have been that they concluded the plaintiff was not using ordi-

nary care. It is true that plaintiff offered the larger number of witnesses and that there is little conflict in the evidence. However, this type of evidence does not admit of but one conclusion. Involved herein is the question of the statutory right of way at an intersection. It was solely for the jury to decide if plaintiff was exercising ordinary care for his own safety when he entered the intersection.

When plaintiff was 30 feet from the intersection, the defendant was 200 feet west. While plaintiff traveled the next 30 feet, the defendant traveled 120 feet according to plaintiff's testimony. If both cars continued to approach the intersection at this rate, a collision would seem to be inevitable. The jury may have concluded that an ordinarily careful person would have chosen a different course of action. We cannot say that such a conclusion is compelling but neither can we say that such a conclusion is against the manifest weight of the evidence.

Courts have always been troubled by a definition of the rights of parties at intersections. Recently in Genck v. McGeath, 9 Ill App2d 145, 132 NE2d 437, an intersection case, the defendant chose to offer no testimony in his behalf. The trial court directed a verdict for the plaintiff and defendant appealed contending that even on the basis of the uncontradicted evidence the issues of negligence and due care were for the jury. The Third District Appellate Court reversed the trial court. In that case the facts were strikingly similar to the instant case. The court said, "Even where there is no dispute in the evidence but where inconsistent conclusions may legitimately be drawn, the question is one for the jury."

This case was followed by the First District Appellate Court in Ryan v. Goldblatt Bros., Inc., 24 Ill App2d 239, 164 NE2d 280. In the Ryan case, the court said, "There are cases such as those involving a collision at an intersection, where the circumstances

177

under which the accident occurs makes the question one of fact for a jury, even though no evidence is offered by the defendant."

■ We cannot say that the jury verdict is wrong and against the manifest weight of the evidence.

The other point raised is that two instructions given by the defendant were erroneous. Both instructions complained of were peremptory in form. Defendant contends that these claimed errors are not properly before this court since the plaintiff did not abstract all the instructions in the cause and further contends that the instructions are proper in form. In his reply brief, the plaintiff recognizes the rule that all instructions must be abstracted but contends that the rule is not applicable where peremptory instructions are involved. Plaintiff says that an erroneous peremptory instruction cannot be cured by other instructions and so it would not avail the court to have before it the other instructions given in the cause. There is logic in plaintiff's contention but although plaintiff asserts an exception to the general and well recognized rule, if such an exception exists, the exception has never been recognized or asserted in any other reported case in Illinois.

The rule requiring all instructions to be abstracted is not a mere technical trap for the unwary. Its purpose is three-fold: First, the rule affords the trial court an opportunity to consider non-peremptory instructions in connection with all of the other instructions to determine whether or not any one instruction can be said to be erroneous and the error of that instruction not cured by the other instructions. Second, the court is given an opportunity to determine whether or not it affirmatively appears that an erroneous peremptory instruction, which cannot be cured by other instructions, did not prejudice the complaining party. If such an affirmative showing

is made, there is no just reason to reverse. In the absence of such an affirmative showing, reversal is required. Third, the court is given an opportunity to determine if the complaining party is precluded from assigning error because of similar instructions he himself gave.

■ Recently, in Donnell Hydraulic Company v. Standish, 29 Ill App2d 74, 172 NE2d 520 (abst), we stated that the giving of an erroneous peremptory instruction was not necessarily reversible error. In those instances where the record shows affirmatively that the error was not prejudicial and could not have misled the jury, such errors will not be deemed grounds for reversal. In the Donnell case, we relied upon Duffy v. Cortesi, 2 Ill App2d 511, 119 NE2d 241, and Latsis v. Walsh, 28 Ill App2d 91, 170 NE2d 633.

In this appeal, the abstract unfortunately fails to show all of the instructions given for both parties. In the absence of all the instructions, we are unable to say that the jury was not misled. But the omission was not the responsibility of the defendant.

We think that of necessity there is implicit in the language of Duffy v. Cortesi and Latsis v. Walsh a requirement that the court have before it an abstract of all of the record so that the entire record may be carefully examined for prejudice, or the absence of prejudice. As the Supreme Court said in the Duffy case, "the trend of judicial opinion reveals a reluctance to reverse cases on the ground of technical errors in instructions; hence, courts have reiterated that the instructions will be considered as a whole, and where the jury has not been misled, and the complaining party's rights have not been prejudiced by minor irregularities, such errors will not be deemed grounds for reversal." The purpose of the examination of all of the instructions is not to attempt to

cure error, for it is abundantly clear that error in peremptory instructions cannot be cured. Rather, the court looks at the effect of the error on the result to determine if the record affirmatively shows that the error did not prejudice a party.

By plaintiff's failure to include all the instructions in the abstract, we are prevented from considering the instructions as a whole. Defendant's right to have this consideration of all the instructions, and our reluctance to reverse on the grounds of technical errors in instructions outweighs plaintiff's claimed but unrecognized exception to a well known and ancient rule.

Finally, for all that the abstract shows, the plaintiff himself may have given instructions similar to those of which he now complains. This court said in Borst v. Langsdale, 8 Ill App2d 88, 130 NE2d 520, "Ordinarily, a party cannot complain about the giving of instructions where the court, at his request, has given the same kind of instructions." In Hocker v. O'Klock, 16 Ill App2d 414, 148 NE2d 618, we held that where an instruction complained of was identical in theory to one given by the party making complaint, the court could not consider the claimed error. Because all instructions are not abstracted, we do not know if plaintiff himself gave instructions in the form of those of which he now complains.

For plaintiff's failure to abstract all the instructions, we conclude that we cannot consider claimed errors in the instructions, even though the instructions complained of are peremptory.

The judgment of the Circuit Court of Ogle County is affirmed.

Judgment affirmed.

WRIGHT and CROW, JJ., concur.